UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-4469-GW(RZx) | Date | July 13, 2009 |
| Title | *Los Angeles Haven Hospice, Inc. v. Michael O. Leavitt* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Brian M. Daucher                             Russell W. Chittenden, AUSA
Brian Burke Farrell

PROCEEDINGS:   **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (filed 05/26/09)**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (filed 05/26/09)**

Hearing is held. Court hears oral argument. The tentative circulated is hereby adopted as the Court's final ruling (attached).

The Court **grants** Plaintiff's Motion for Summary Judgment on its claim that 42 C.F.R. § 418.309(b) is arbitrary and capricious, and **denies** Defendant's Motion for Summary Judgment to the contrary. The Court will require further presentation as to which of the forms of relief - that Plaintiff now seeks - are appropriate for the Court to award.

The Court **continues** this matter to **July 27, 2009 at 8:30 a.m.** Furthermore, the Court suspends payments up to and including July 27, 2009.

IT IS SO ORDERED.

:   13

Initials of Preparer   JG

<u>Los Angeles Haven Hospice, Inc. v. Sebelius</u>, Case No. CV-08-4469
Tentative Rulings on: 1) Motion for Summary Judgment of Plaintiff Los Angeles Haven Hospice, Inc., and 2) Motion for Summary Judgment of Defendant Kathleen Sebelius, Secretary of United States Department of Health and Human Services

## I. Background

Plaintiff Los Angeles Haven Hospice, Inc. ("Plaintiff") filed this action against Michael Leavitt,[1] the Secretary of Health and Human Services ("Defendant"), seeking declaratory, restitutionary and injunctive relief, along with sums due under the Medicare Act. Plaintiff alleged that it received from Medicare a demand for repayment in connection with revenues allegedly exceeding its aggregate annual provider cap for the fiscal year ending October 31, 2006. *See* Complaint ¶¶ 6-7. Plaintiff, however, challenges the validity of the regulation governing calculation of the cap, 42 C.F.R. § 418.309(b), arguing that it is contrary to 42 U.S.C. §1395f(i)(2)(C), is arbitrary and capricious, and amounts to an unlawful taking of private property in violation of the Fifth Amendment to the United States Constitution. *See* Complaint ¶ 11. Plaintiff therefore asks that the Court declare the regulation invalid, vacate the regulation and enjoin Medicare from using the regulation to calculate cap liability for Plaintiff or any other hospice in the future, declare invalid Medicare's calculation of Plaintiff's cap amounts for fiscal year 2006, and order Medicare to restore to Plaintiff all sums paid by Plaintiff based upon the invalid regulation. *See* Complaint ¶ 12.

The parties have now filed cross-motions for summary judgment.[2]

## II. Analysis

<u>Summary Judgment Standards</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure

---

[1] Kathleen Sebelius is substituted as defendant pursuant to the terms of Fed. R. Civ. P. 25(d).

[2] Defendant moves not only with respect to Plaintiff's argument that the regulation in question is arbitrary and capricious, but also with respect to Plaintiff's takings argument. Plaintiff does not oppose or even address the takings issue in its Opposition, effectively abandoning it. The Court will therefore grant summary judgment in favor of Defendant as to that claim as Plaintiff has not sought to counter the persuasive legal authority proffered by Defendant. *See e.g. Garelick v. Sullivan*, 987 F.2d 913, 916 (2nd Cir. 1993) ("where a service provider voluntary participates in a price-regulated program or activity [in this case Medicare], there is no legal compulsion to provide service and thus there can be no taking."); *see also Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir. 1986).

1

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005). A moving party without the burden of persuasion may carry its burden of production on summary judgment by negating an essential element of the opposing party's claim or defense or by "showing" the opposing party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). With respect to a moving party with the burden of persuasion, "to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (omitting internal quotation marks);

> [If] the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing, among other cases, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[W]here the palpable facts are substantially undisputed, such issues can become questions of law which may be properly decided by summary judgment." *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985); *see also Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) ("Where, as here, the case turns on a mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy collapses into a question of law suitable to disposition on summary judgment.").

Statutory and Regulatory Background

In 42 U.S.C. § 1395f(i)(2), relating to payment for hospice care,[3] the amount paid

---

[3] To qualify for hospice care benefits, an individual must have "a medical prognosis that the individual's life expectancy [is] 6 months or less." 42 U.S.C. § 1395x(dd)(3)(A).

for hospice care provided by a hospice program for an accounting year is limited to a "cap amount" for the year "multiplied by the number of medicare beneficiaries in the hospice program in that year (determined under subparagraph (C))." 42 U.S.C. § 1395f(i)(2)(A). Subparagraph (C) reads as follows:

> For purposes of subparagraph (A), the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, <u>such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year</u> or under a plan of care established by another hospice program.

42 U.S.C. § 1395f(i)(2)(C) (emphasis added). In an implementing regulation, the Department of Health and Human Services ("HHS") calculates each hospice's cap amount "by multiplying the adjusted cap amount...by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period." 42 C.F.R. § 418.309(b). The regulation further provides that the number of Medicare beneficiaries includes:

> [t]hose Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care...from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

42 C.F.R. § 418.309(b)(1).

In the instant cross-motions, Plaintiff argues that 42 C.F.R. § 418.309(b) is arbitrary and capricious and invalid because, instead of calculating the number of medicare beneficiaries in a way such that the number is "reduced to reflect the proportion of hospice care that each...individual was provided in a previous or subsequent accounting year," HHS's regulation simply includes an individual in a single accounting year depending upon when that individual filed an election to receive hospice care.[4]

---

[4] As stated by the Defendant in promulgating the regulation:
> With respect to the adjustment necessary to account for situations in which a beneficiary's election overlaps two accounting periods, we are proposing to count each beneficiary only in the reporting year in which

3

However, before reaching that question under the standards set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Court must analyze Defendant's argument that Plaintiff lacks Article III standing sufficient to challenge the regulation at issue. Defendant takes this position because of its conviction that, in essence, Plaintiff has not demonstrated how it would be any better off were the implementing regulation to follow precisely the Congressional directive to adjust the Medicare beneficiary count to reflect proportional care.

Standing

To establish Article III standing, Plaintiff must have suffered an injury in fact, must show a causal relationship between the injury and the challenged conduct, and must demonstrate a likelihood that its injury will be redressed by a favorable decision from the court. *See Mortensen v. County of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004); *Newman v. Apfel*, 223 F.3d 937, 941 (9th Cir. 2000). The burden is on the party invoking federal jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Whether standing exists is a question of law. *See Fernandez v. Brock*, 840 F.2d 622, 626 (9th Cir. 1988).

As an initial matter, the Court rejects Defendant's attempt to argue that Plaintiff lacks standing simply because it cannot show that any injury it might have suffered stems entirely from 42 C.F.R. § 418.309(b). Obviously there can be multiple causes of an Article III injury. *Cf. Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (noting, for purposes of redressability analysis, that a plaintiff "need not show that a favorable decision will relieve his *every* injury") (emphasis in original).

Defendant understands the injury in fact concept too narrowly in these circumstances. The injury in fact in this context (if Plaintiff's statutory argument has merit) is the fact that HHS is operating an invalid regulation, leading to accounting and payment inaccuracies. Thus, the injury question here is not whether Plaintiff's liability is greater under the operation of section 418.309 than it would be under some other regulation. There is no other regulation. That is always true when a party challenges an

---

> the preponderance of the hospice care would be expected to be
> furnished rather than attempting to perform a proportional adjustment.

48 Fed. Reg. 38,146, 38,158 (Aug. 22, 1983).

allegedly invalid regulation. *Cf. Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 280-81 n.14 (1978) (rejecting argument that standing depended upon whether medical school applicant could show that he would have been admitted but for the challenged affirmative action admissions program); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261-62 (1977) (holding that standing existed even though there was no guarantee that plaintiff would successfully obtain goal if requested relief were granted); *West Virginia Assoc. of Comm. Health Ctrs. v. Heckler*, 734 F.2d 1570, 1574-76 (D.C. Cir. 1984); *Samaritan Health Ctr. v. Heckler*, 636 F.Supp. 503, 512 (D.D.C. 1985) ("The plaintiffs have demonstrated in uncontroverted affidavits that they are among the intended beneficiaries of the disproportionate share provision. Since they are therefore arguably qualified to receive an adjusted prepayment, 'they need not shoulder the additional burden of demonstrating that they are certain to receive funding.'") (quoting *West Virginia Assoc. of Comm. Health Ctrs.*, 734 F.2d at 1576). *But see cf. Matter of Extradition of Lang*, 905 F.Supp. 1385, 1397-98 (C.D. Cal. 1995) (rejecting mere unconstitutionality as an injury in fact where plaintiffs "seek to be reevaluated under a new system, even though there is no indication that they were harmed by the old one"); *Fernandez*, 840 F.2d at 628 (concluding that redressability lacking where plaintiff farmworkers could not know what any regulations would say and could not predict whether employer would continue to offer pension plan at all).

  To require the plaintiff in such a circumstance to somehow devise their own proposed regulation which they believe comports with Congress's precise statutory directive would send the parties and the Court scurrying down the rabbit hole to Wonderland. If Defendant is concerned about advisory opinions, it seems odd that it would require everyone involved – including the Court – to engage in such a speculative exercise.[5] This understanding of the standing question as it relates to this case is

---

[5] Even if Defendant's understanding of injury were credited, standing would still appear to be satisfied here, at least under Ninth Circuit case law. While it is ordinarily true that mere allegations are insufficient when it comes to a summary judgment proceeding, there is apparently some deviation permitted when it comes to standing, at least if the Ninth Circuit is to be understood literally. "At the summary judgment stage, factual allegations in support of standing are taken as true." *Alaska Wildlife Alliance v. Jensen*, 108 F.3d 1065, 1068 (9th Cir. 1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Trout Unlimited v. Lohn*, 559 F.3d 946, 954 (9th Cir. 2009) ("In passing, NMFS also contends that the Building Industry lacks standing. In response, the Building Industry points to allegations in its cross-complaint which, we are satisfied, establish standing."). If indeed, Plaintiff need only reference the

consistent with the Supreme Court's guidance that where the plaintiff is itself an object of the government action (as is clearly the case here) "there is ordinarily little question that the action...has caused [it] injury, and that a judgment preventing or requiring the action will address it." *Lujan*, 504 U.S. at 561-62.

Plaintiff has Article III standing to challenge the regulation in question.[6]

<u>*Chevron* Standards and Analysis</u>

The Supreme Court has explained the district court's role in reviewing an agency's construction of a statute:

> [The Court] is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also Jang v. Reno*, 113 F.3d 1074, 1076-77 (9th Cir. 1997) ("If the statute is silent or ambiguous, and if Congress has not expressed any intent on the precise question, [the court will] defer to the [agency's interpretation of the statute unless it] is arbitrary or capricious."). To determine whether "Congress has directly spoken to the precise question in issue," a court begins with traditional methods of statutory interpretation. *See Yang v. INS*, 79 F.3d 932, 935 (9th Cir.) (citing *Chevron*, 467 U.S. at 842-43), *cert. denied*, 519 U.S. 824 (1996). If Congress has been silent with respect to the specific

---

allegations in its Complaint for purposes of establishing standing, it would unquestionably meet the standing requirement here. Of course, these notions run contrary to the Supreme Court's instruction in *Lujan*, where the Court indicated that "[i]n response to a summary judgment motion...the plaintiff can no longer rest on...'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'...which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (omitting internal citation).

[6] In light of the basis for this recommended ruling, the Court need not rule on Plaintiff's Second Supplemental Request for Judicial Notice in Support of its Motion for Summary Judgment, as to which Defendant has filed an objection.

issue, the court must then ask whether "the agency's answer is based on a permissible construction of the statute." *Yang*, 79 F.3d at 835 (citing *Chevron*, 467 U.S. at 843). The Supreme Court further explained:

> The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. (Citation omitted.) If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron*, 467 U.S. at 843-44. A court may "not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844. Therefore, in the face of ambiguity or Congressional silence, a court should defer to the agency's considered judgment. *Yang*, 79 F.3d at 935.

Here, the answer under the *Chevron* analysis is plain and the Court need not proceed beyond the initial inquiry required thereunder.[7] It may be true that the statute's directive is administratively cumbersome. However, Congress unquestionably required that the number of medicare beneficiaries be reduced to reflect "the proportion" (not simply <u>a</u> proportion or <u>an</u> estimate, as Defendant would apparently have "reflect" mean in this context[8]) of hospice care that "each such individual" (not individuals in the aggregate) "was provided in a previous or subsequent accounting year." *See* Defendant's Statement of Genuine Issues ("DSGI") ¶ 3; *compare Sid Peterson Mem'l Hosp. v. Thompson*, 274 F.3d 301, 307 (5th Cir. 2001) ("The Secretary could have rationally

---

[7] It appears that only two courts have confronted arguments similar to those raised herein. In *Heart to Heart Hospice, Inc. v. Leavitt*, No. 1:07-CV-289-M-D, 2009 U.S. Dist. LEXIS 11442 (N.D. Miss. Feb. 5, 2009), the district court wound up denying both sides' motions for summary judgment and remanding the action because it concluded that the facts of the case "and also the broader legal and public policy issues raised…require[d] further development" prior to the Court's ruling. *Id.* at *1. It reached this conclusion not because of the merits of the plaintiff's claim, but largely due to the expansive scope of relief sought. *See id.* at *10. The Heart to Heart court also rejected a standing challenge, though it indicated that it was precluding the plaintiff from proceeding further until it established the extent of its damages for purposes of determining what relief to afford the plaintiff. *See id.* at *16-17. In *Sojourn Care, Inc. v. Leavitt*, No. 07-375 (N.D. Ok. 2007), the district court granted the plaintiff's motion for summary judgment, adopting the same approach as utilized here. *See* Haven Hospice's Request for Judicial Notice in Support of its Motion for Summary Judgment, Exh. 2, at 133-34, 141-43.

[8] When understood in conjunction with Congress's specific reference to "<u>the</u> proportion," Defendant's reading of "reflect" is synonymous with "distort."

concluded that individualized costs calculations were <u>neither required by the statutory text nor administratively practicable</u>....") (emphasis added). The regulation in question runs counter to that directive. *See* DSGI ¶ 8. Congress has "directly spoken" to this "precise question." *Chevron*, 467 U.S. at 842. "[T]hat is the end of the matter." *Id.*

## III. Conclusion

The Court grants summary judgment in favor of Plaintiff on its claim that 42 C.F.R. § 418.309(b) is arbitrary and capricious, and denies Defendant's motion to the contrary. Nevertheless, as was the case in both *Heart to Heart Hospice* and *Sojourn Care*, the Court will require further presentation as to which of the forms of relief - that Plaintiff now seeks - are appropriate for the Court to award.